FILED
Clerk
District Court

JUN 1 8 2014

for the Northern Mariana Islands
By_____
(Deputy Clerk)

PAMELA BROWN BLACKBURN – F-0174
LAW OFFICE OF PAMELA BROWN BLACKBURN
SUITE 101, MARIANAS BUSINESS PLAZA, P.O. BOX 5077
SAIPAN, MP 96950
670.234.9486
Pbrown52@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

14-00015

| | |
|---|---|
| CARLTON STEVENS,<br>Carlton,<br><br>Vs<br><br>Commonwealth Utilities Corporation, Alan W. Fletcher, in his personal capacity, Francisco Cepeda, in his personal capacity, Richard Wasser, in his personal capacity, and Paul Raczkowski, in his personal capacity.<br>Defendant. | CIVIL ACTION NO. 04-<br><br>**VERIFIED COMPLAINT FOR VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964** |

COMES NOW, CARLTON STEVENS, by and through his undersigned counsel, and in support of this verified complaint against the defendant for violations of the Title VII of the Civil Rights Act of 1964, as amended (hereinafter "Title VII") to lost future wages, compensatory damages, injunctive relief, attorneys' fees, and costs under §2000e-5 of the Civil Rights Act of 1964, as amended and to recover such other damages as may be proper, hereby alleges as follows:

-1-

## JURISDICTION

1. This Court has jurisdiction over Carlton's Title VII claims under 42 U.S.C. §2000e-5(f), 42 U.S.C. §1981 and 28 U.S.C. §1337(a). The Court has supplemental jurisdiction of Carlton's breach of contract claims pursuant to 28 U.S.C. § 1367.

2. Title VII of the Civil Rights Act of 1964, at 42 U.S.C. §2000e-2(a), (hereinafter "Title VII"), and 42 U.S.C. §1981 (hereinafter "§1981") apply to this matter through the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States ("Covenant"), Article V, §502(a)(2).

3. Venue is properly placed in this Court since at all relevant times. Carlton was an employee of Defendants and was providing services for the defendants in Saipan, in the Commonwealth of the Northern Mariana Islands ("CNMI").

## PARTIES

4. Carlton, CARLTON STEVENS (hereinafter "Carlton") is an African American citizen residing in Saipan, Commonwealth of the Northern Mariana Islands, who at all times material hereto, was employed as the Direct Responsible Charge Operator (hereinafter "DRCO") for the Wastewater Division of CUC with supervisory responsibilities for three (3) CUC Trades

-2-

1  Assistants.

2

3  5.   Defendant Commonwealth Utilities Corporation (hereinafter "CUC") is an

4  autonomous agency of the CNMI government organized pursuant to CNMI P.L.4-47 as amended

5  by P.L. 16-17 and at all times material hereto was the employer of Carlton as defined under §

6  2000e of Title VII (42 U.S.C. 2000e).

7

8  6.   Defendant Alan Fletcher, (hereinafter "Fletcher") is a Caucasian-American citizen,

9

10  residing in the CNMI, who, at all times material hereto, was the Executive Director of CUC, who

11  on information and belief, was the ultimate hiring and firing authority for CUC.

12

13  7.   Defendant Frank Cepeda, (hereinafter "Cepeda") is a Chamorro-American citizen

14  residing in the CNMI, who, at all times material hereto, was the Human Resources Director for

15  CUC.

16

17  8.   Defendant Paul Raczkowski (hereinafter "Raczkowski") is a Caucasian-American

18

19  citizen, residing in the CNMI, who at all times material hereto, was the Water & Wastewater

20  Manager in the Water and Wastewater Division of CUC.

21

22  9.   Defendant Richard Wasser (hereinafter "Wasser") is a Caucasian-American citizen,

23  residing in the CNMI, who at all times material hereto, was the Wastewater Manager in the

24  Water and Wastewater Division of CUC and the direct supervisor for Carlton.

25

26  10.  CUC, Fletcher, Cepeda, Raczkowski and Wasser, when appropriate to a claim

27  brought against them for their collective action shall hereinafter be referred to as "Defendants."

28

11. At all times mentioned herein, Defendants were engaged in the business of operating a semi-autonomous utilities corporation of the CNMI government and was conducting business in commerce within the meaning of § 2000e of Title VII (42 U.S.C. 2000e).

12. In performing his duties as DRCO as described herein, Carlton was engaged in commerce in that Defendant's businesses involved interstate commerce within the meaning of § 2000e of Title VII (42 U.S.C. § 2000e)

## FACTUAL BACKGROUND

13. Carlton hereby re-alleges and incorporates paragraphs 1 to 12 herein as if set forth in full.

14. On or about February 28, 2011, Carlton commenced employment pursuant to an approved employment contract with CUC after being interviewed and vetted by Cepeda.

15. Defendants hired Carlton as DRCO pursuant to an employment contract for a term of two (2) years.

16. Throughout his employment at CUC, Carlton was the only African-American in a supervisory role.

17. From commencement of his employment in February 2011 to December 2012, Carlton was not provided with an operable computer equipment or office space to perform his job duties despite making several requests for such to both Raczkowski and Wasser.

18. In November 2011, Defendants provided a used, discarded CUC computer only after

4

his rented computer was stolen.

19. In April 2012, Carlton returned the used, inoperable CUC computer to Defendants as it was could not be repaired.

20. Defendants indicated that they would provide a replacement CUC computer but never did so during the term of his employment.

21. During the entire tenure of his employment, Defendants provided no office space to Carlton in the main operating headquarters despite providing such offices to similarly situated CUC employees.

22. Carlton was forced to operate out of a make shift office space with no internet connection at the work site to which Carlton was assigned approximately ten (10) miles from Defendants' main offices until an office was finally completed at the work site in November 2012 and internet connection was established in December 2012.

23. Employees with CUC issued vehicles regularly used such vehicles for personal business including but not limited travelling to and from lunch time locations, dropping off family members at various locations, trips to stores, etc. as well as travelling to and from home and work locations.

24. Carlton was not issued a CUC vehicle during his employment tenure but was permitted the use of a CUC truck for which four (4) sets of keys were shared amongst several CUC employees including Wasser, and the only other supervisory-level employee, Jesse

1  Randles, a Caucasian-American.

2

3  25. Use of the CUC truck shared by several CUC employees was tracked through both

4  the GPS tracking system in the truck and by security guards who maintained a log sheet for the

5  use of the truck after working hours from 4:30 p.m. to 7:30 a.m. and on weekends.

6

7  26. Carlton was on-call after hours for any problems at the project at his work site for

8  which Carlton used his personal vehicle to respond without compensation for such use.

9

10  27. Due to the lack of office space with internet connection and a CUC computer,

11  Carlton was forced until December 2012 to complete reporting duties and other tasks as required

12  by his employment during his off- the-clock time during lunch or after working hours from his

13  home using his personal computer or on a computer that he rented with his personal funds.

14

15

16  28. Wasser, Carlton's immediate supervisor, was given written notice by Carlton of all

17  operational and work schedule changes as each required Wasser's prior approval before being

18  put into effect by Carlton with copies to the engineering department,

19

20  29. On information and belief, Wasser failed to report this information to Raczkowski.

21

22  30. On or about May 22, 2012, Carlton attempted to take medical leave but his medical

23  leave slip, originally rejected by Raczkowski due to its format.

24

25

26  31. Despite Carlton submitting proper documentation including his treating physician's

27  statement that he was not fit to work for the approval of such medical leave, Raczkowski

28  continued to refuse to approve the medical leave since, on information and belief, Wasser never

6

showed Raczkowski the physician's statement that Carlton was not fit to work.

32. In accordance with the employee handbook grievance procedure, Carlton commenced a formal grievance against Raczkowski and Wasser and requested a meeting to resolve the issue.

33. No meeting was ever conducted but instead, in August 2012, Fletcher e-mailed Carlton stating that Raczkowski's refusal to approve the medical leave as well as the entire procedure to which Carlton was subjected was inappropriate and promised a meeting.

34. From May 2012 through November 2012, Carton requested meetings to discuss various issues such as work place safety due to work schedule changes implemented by Raczkowski in violation of the CUC employee handbook and other concerns as well as the false accusations that were being made against him by Raczkowski.

35. Carlton directed his communication in writing to Cepeda and Fletcher in accordance with the employee handbook on grievances and appeals of adverse actions requesting meetings, copies of investigation reports and hearings.

36. On several occasions, Carlton spoke directly with Cepeda regarding his contention that he was being singled out for corrective action and other criticism by Raczkowski.

37. Despite his numerous requests, written filings, and following the procedures set forth in the employee handbook for addressing adverse actions, Defendants failed to take any action whatsoever on his requests for meetings to address his various concerns; on his filings of

grievances and appeals; on his request for copies of investigation reports regarding allegations made against him by Raczkowski; or on his requests for hearings.

38.   On information and belief, Defendants failed to respond to any of Carlton's employment related requests as stated in paragraph 37 since they believed that none of the matters raised required their response which was not only in direct conflict with CUC's employee handbook but also was unique to Carlton since other employees routinely had their concerns resolved.

39.   On February 13, 2013, Carlton received a letter informing him that his position was being advertised and that should he so desire he could apply and go through the hiring process like any other applicant.

40.   On information and belief, however, Defendants' decision to not renew Carlton's contract was based on the very same reasons about which he had repeatedly requested meetings; requested investigation reports regarding false allegations made against him; filed grievances and appeals; requested hearings on his grievances; complained of being denied benefits routinely permitted other similarly situated employees; and advocated for better working conditions for the workers that he supervised.

41.   Defendants retaliated against Carlton for not being a team player and for standing up for the due process rights and benefits afforded him in his employment contract and pursuant to the CUC employees' handbook.

## COUNT I: RACIAL DISCRIMINATION WITH RESPECT TO PRIVILEGES OF EMPLOYMENT

42.  Carlton hereby re-alleges and incorporates paragraphs 1 through 41 of this Complaint as if more fully set forth herein.

43.  Defendants were Carlton's employer as defined under 42 U.S.C. § 2000e of Title VII.

44.  Defendants were prohibited from discriminating with respect to Carlton's privileges of employment.

45.  CUC, through its agents, Fletcher, Cepeda, Wasser, and Raczkowski, disparate treatment of Carlton due to his race amounted to race based employment discrimination.

46.  Carlton is entitled to compensatory damages in an amount proven at trial for discriminatory denial of equal privileges of employment.

47.  Carlton is entitled to declaratory relief that Defendants practice disparate treatment of Carlton which amounted to race based discriminatory employment practices in violation of Title VII.

## COUNT II: RETAILIATION

48.  Carlton re-alleges and incorporates paragraphs 1 through 47 as if fully set forth herein.

49.  Defendants did not renew Carlton's employment contract in relation for his complaints of discriminatory denial of the privileges of his employment and Defendants' disparate treatment

9

based on his race.

50. Defendants non-renewal of Carlton's employment contract in retaliation for his complaints of disparate treatment based on race is in violation of 2000e of Title VII.

51. Carlton is entitled to compensatory damages equal to his compensation pursuant to his employment contract for a period of two-year, plus liquidated damages.

## PRAYER FOR RELIEF

WHEREFORE, Carlton prays for judgment against the defendant, as follows:

1. For compensatory damages in an amount to be proven at trial as provided under 2000e of Title VII as alleged under Count I;
2. For declaratory relief that Defendants' discriminatory employment practices are in violation of § 2000e of Title VII as alleged herein;
3. For loss of compensation and benefits that Carlton would have earned for the term of his renewable employment contract but for the retaliatory and discriminatory termination of the employment relationship by Defendants as alleged under Count II;
4. For an award for all costs and attorneys' fees as provided under § 2000e-5(k); and
5. For such other and further legal and equitable relief as the Court deems just and proper.

Dated this 17th day of June, 2014.

_____/s/_____
PAMELA BROWN BLACKBURN F-0174
Attorney for Plaintiff

## VERIFICATION

I, Carlton Stevens, do hereby verify that all facts set forth herein are true and correct to the best of my knowledge and so declare under penalty of perjury. I also declare that I was issued a

1 Right to Sue determination by the Equal Employment Opportunity Commission in my charge of discrimination 486-2013-00214, a true, accurate and correct is attached hereto for the Court's
2 convenience.
3
    So declared this 17th day of June, 2014.

_____
Carlton Stevens, Plaintiff